**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division**

| | |
|---|---|
| **CINDY M. INGRAM,** ) | |
| **Plaintiff,** ) | |
| v. ) | |
| ) | Case No. 07-2157 |
| **COMMISSIONER OF SOCIAL SECURITY,** ) | |
| **sued as Michael J. Astrue,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

In May 2007, Administrative Law Judge (hereinafter "ALJ") David Thompson denied disability insurance benefits and supplemental security income benefits to Plaintiff Cindy Ingram. The ALJ based his decision on findings that Plaintiff was able to perform her past work and other jobs that exist in significant numbers in the national economy; therefore, she was not disabled within the meaning of the Social Security Act.

In August 2007, Plaintiff filed a Complaint (#4) against Defendant Michael Astrue, the Commissioner of Social Security, seeking judicial review of the final decision by the Regional Commissioner of the Social Security Administration denying benefits. In August 2008, Plaintiff filed a Motion for Summary Judgment or Remand (#14) and in November 2008, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#18). In December 2008, Plaintiff filed a Short Reply in Support of Her Motion for Summary Judgment or Remand (#20-2). After reviewing the administrative record and the parties' memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Plaintiff's Motion for Summary Judgment or Remand **(#14)** be **GRANTED**.

### I. Background

#### A. Procedural Background

Plaintiff first applied for benefits in August 2005, alleging an onset date of April 27, 2005. Her applications were denied initially and upon reconsideration. She appealed and ALJ

Thompson held a hearing in April 2007, at which Plaintiff testified. James Reagans, a vocational expert, also testified. Gerald Breslin, a nonattorney, represented Plaintiff at the hearing. In May 2007, ALJ Thompson found that Plaintiff was not disabled within the meaning of the Social Security Act and denied her applications for benefits. Plaintiff then filed a request for review of the hearing decision, which the Appeals Council denied in June 2007, making the ALJ's decision the final decision of the Commissioner. Plaintiff subsequently appealed the decision to this Court.

### B. Plaintiff's Medical Background

Both parties described Plaintiff's medical background. The Court will not repeat it here, except to list Plaintiff's medications, which include Prevacid, Protonix, Synthroid, Norvasc, Lasix, Klon-kor, Actonel, Calcium, Cymbalta, Ultram, Piroxicam, Advair Diskus, Albuterol, Albuterol sulfate solution, and oxygen. (R. 162.)

### C. Testimony at the Hearing

At the hearing, Plaintiff testified that she was 45 years old. She weighed 195 pounds and stands 5 feet 5 inches tall. She lives by herself. She drove to the hearing. She has completed the eleventh grade but she does not have a high school diploma or GED.

Plaintiff takes a number of medications. If her pain level is already too high, they do not work other than make her sleepy. (R. 613.) Generally, they make her feel run down and without energy. (R. 614.) Plaintiff has been on oxygen since July 2005. She uses it as needed. If she is having a bad day, she might use it two times. (R. 622.) Plaintiff also has a breathing machine that provides medication; she uses it when the oxygen does not seem to be helping. A treatment takes about five minutes and she will use it once or twice a week. Her doctor has told her not to use it more than three times a day. (R. 623.)

Plaintiff rated her pain as a six out of ten on average (with ten being most severe). On a good day, she rates it as four or five, and on a bad day, she rates it as an eight or nine. (R. 614.) Plaintiff testified that she has more bad days when the weather changes. She averages a couple good days a week. (R. 620.) Plaintiff does not sleep well. She generally tries to go to bed around 10:00 and she wakes up every couple hours. Sometimes she wakes up because of pain and sometimes she just wakes up. Plaintiff will nap every day in the afternoon and if she has had to take extra pain medication, then she will be asleep for a little while. (R. 623-24.)

Plaintiff testified that she is unable to work because she cannot stand for long periods of time, she has trouble with lifting and walking, her hips hurt, and her knees, especially her right knee, will buckle. Her thumbs hurt and she cannot stand to have anyone touch her because it hurts, especially across her back and around the rib cage. She also feels depressed because she would rather be working. (R. 615.) Plaintiff takes medication for her depression. She was receiving treatment, but they wanted her to come three times a week and she does not have the money to travel to the treatment location. (R. 624.)

Plaintiff stated that she cannot stand more than five or ten minutes before she has to sit down. She can walk about 70 feet. She can lift and carry about five to seven pounds. If she drops something, she could bend over and pick it up if she had something to hold onto. She can go down stairs if she has a railing to hold and she can push and pull with her hands and arms, for example, to open and close a cupboard door or car door. Plaintiff can sit about 15 to 20 minutes before she has to stand up. If Plaintiff could stand or sit when she wanted to, she could continue for about an hour before she would have to lie down. (R. 616-17.) Plaintiff experiences shortness of breath when she walks about a distance of 70 feet and sometimes has to stop to rest. Plaintiff also experiences shortness of breath when she walks up a few steps. (R. 620-21.) Plaintiff does not think that she could work, for example, picking something up and putting it on a conveyor belt, because of weakness. (R. 621.)

Plaintiff drives to town about once a week, a distance of 26 miles round trip. She smokes about one pack of cigarettes a day; she has chronic obstructive pulmonary disease and her doctor has told her she should not smoke, so she is trying to quit. Plaintiff testified that her friends buy cigarettes for her. (R. 618-19.)

Plaintiff does her own cooking, laundry in small loads, dishes, and vacuuming. She makes her bed sometimes. She goes grocery shopping with help from a friend. (R. 619.) She changes her sheets about once a month on a day when she feels good or she waits until she has help. (R. 622.) Plaintiff has a lot of friends who call and check on her and she will call them when she needs help. (R. 624.)

Plaintiff has a limited income and her doctors help her obtain medications through the pharmaceutical companies. She has no insurance and her income from alimony is about $7,000 a year. Because her income is so low, she is eligible for financial assistance at the medical clinic. (R. 619-20.)

James Reagans, a vocational expert (hereinafter "VE"), also testified at the hearing. He first noted that Plaintiff's work summary should include a listing for injection molding machine operator, a medium-level skilled job with an SVP of 5. (R. 626.) The ALJ then described a hypothetical individual, 45 years old, with the same education and experience as Plaintiff, who is limited to light work with occasional postural limitations, and who must avoid concentrated exposure to extreme temperatures, humidity, dust, odors, gases, and fumes. The VE testified that those restrictions would preclude work as a stock clerk, kitchen helper, hand packager, machine packager, and injection molding machine operator, but they would not preclude work as a waitress or cashier. Reducing the individual's exertional level to sedentary work would preclude all those jobs. (R. 626.) However, an individual who was limited to sedentary work would be able to perform other sedentary jobs, including unskilled telemarketing jobs and some production-oriented bench craft unskilled occupations. (R. 626-27.) Regarding unskilled telemarketing jobs, the VE explained that, although the *Dictionary of Occupational Titles*

(hereinafter "DOT") classifies telemarketing jobs as having an SVP of three (indicating a semi-skilled job), the work is, in fact, unskilled as it is performed in this region. (R. 627.)

The VE also explained that, if the individual did not have a twelfth grade education or GED, there would be approximately a 25 percent reduction in the number of available telemarketing jobs. The VE testified that, if the individual had a sit/stand option, that would not appreciably affect the number of available jobs. The VE testified that all previously mentioned jobs were unskilled. If the individual were limited to simple routine tasks, there would be no effect on the number of jobs. If the individual would have to miss four or more days per month, he would not be able to sustain employment. (R. 628.)

At Mr. Breslin's request, the VE considered a report from Dr. Timothy Lenardo. The VE stated that, based on Dr. Lenardo's assessment of Plaintiff's functional limitations, an individual with those limitations would be unable to perform past relevant work or any other work.

The VE then considered the Physical Capacities Evaluation completed by Dr. Rahat Sheikh (Exhibit C25F, R. 577-79) and testified that those limitations would not preclude work as a cashier. In addition, a hypothetical individual with the described limitations would be able to work at production-oriented bench-type positions.

### D. The ALJ's Decision

To be entitled to social security disability benefits, a plaintiff must show that he is unable to engage in any substantial gainful activity because of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 416(i)(1). To determine disability, the Commissioner uses a five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, that is, one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals

a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his past relevant work; and (5) if the claimant cannot perform the past work, whether the claimant can do other jobs that are available in the national economy. Between steps three and four, the ALJ determines the claimant's residual functional capacity, that is, the work he is still able to perform despite limitations. 20 C.F.R. § 404.1545. The claimant bears the burden of production and persuasion at steps one through four. Once the claimant shows he is unable to perform past work, the burden shifts to the Commissioner to show that the claimant is able to engage in some other type of substantial gainful employment. *Campbell v. Shalala*, 988 F.2d 741, 743 (7th Cir. 1993).

The ALJ's decision followed this five-step process. At the first step, the ALJ found that Plaintiff has not been engaged in substantial gainful activity since the onset of disability. At the second step, the ALJ determined that Plaintiff had severe impairments, including chronic obstructive pulmonary disease (COPD) and arthritis. At the third step, the ALJ determined that Plaintiff's condition did not meet or medically equal any of the impairments listed in the Regulations. (R. 19.) The ALJ determined that Plaintiff has the residual functional capacity (hereinafter "RFC") to perform light work with some restrictions. She is able to lift up to 20 pounds occasionally and up to 10 pounds frequently and she can stand/walk/sit up to six hours in an eight-hour day. She is limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling and she must avoid concentrated exposure to extreme heat, cold, humidity, fumes, odors, dust, gases, and places with poor ventilation. (R. 20.) Based on this RFC, at step four, the ALJ determined that Plaintiff was able to perform her past relevant work as a waitress and cashier. (R. 23.) For purposes of argument, the ALJ then considered a scenario in which Plaintiff was limited to sedentary work with the above-listed postural and environmental limitations. That RFC would preclude past relevant work. However, with that RFC, at step five, the ALJ concluded that, based on the VE's testimony, Plaintiff would be able to perform other jobs that exist in the national economy. (R. 23-24.) The ALJ also determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her

symptoms were not entirely credible. (R. 21.) The ALJ found that Plaintiff was not disabled and therefore she was not eligible for social security benefits. (R. 24-25.)

## II. Standard of Review

In reviewing an ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's finding with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). The findings of the Commissioner of Social Security as to any fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, the question before the Court is not whether a plaintiff is, in fact, disabled, but whether the evidence substantially supports the ALJ's findings. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether a plaintiff is disabled, the Court must affirm the ALJ's decision denying benefits. *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996).

The Court gives considerable deference to the ALJ's credibility findings and will not overturn them unless the plaintiff can show that those findings are patently wrong. *Urban v. Sullivan*, 799 F. Supp. 908, 911 (C.D. Ill. 1992). However, when credibility determinations rest on objective factors or fundamental implausibilities rather than subjective considerations, reviewing courts have more freedom to review the ALJ's credibility determination. *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994).

## III. Analysis

Plaintiff argues that the Court should grant summary judgment in her favor or remand this case for the following reasons: (1) the ALJ's RFC finding was incomplete, ignored evidence, and failed to properly weigh opinions of record; (2) the ALJ improperly assessed Plaintiff's credibility; and (3) the ALJ erred at Steps Four and Five.

### A. The ALJ's RFC Determination

Plaintiff argues that the ALJ arrived at an improper RFC because he ignored several significant impairments, including fibromyalgia, nonrestorative sleep, leg weakness, lumbar spondylosis injury, hand problems, knee osteoarthritis, shoulder pain, and foot pain. Plaintiff also argues that the ALJ failed to properly weigh the opinions of record, improperly dismissed the treating doctors' opinions, impermissibly relied on nonexamining doctors' reports, and failed to consider the combination of Plaintiff's severe and nonsevere impairments, especially failing to consider Plaintiff's obesity.

Defendant responds that all these criticisms amount to no more than "nitpicking" the ALJ's decision and Plaintiff has overlooked the basic fact that substantial evidence in support of a different finding does not, by itself, warrant remand. *See Books*, 91 F.3d at 978 ("so long as, in light of all the evidence, reasonable minds could differ concerning whether [a claimant] is disabled, we must affirm the ALJ's decision denying benefits"). Defendant contends that the ALJ took into account all of Plaintiff's impairments, even though he did not label them as "severe." *Raines v. Astrue*, No. 06-cv-0472-DFH-TAB, 2007 WL 1455890, *7 (S.D. Ind. April 23, 2007) (unreported). An ALJ is not required to discuss every piece of evidence, but only to articulate his rationale sufficiently to allow meaningful review. *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987).

The most significant of Plaintiff's arguments relates to the ALJ's reliance on the mental and physical RFC assessments, which also implicates the ALJ's consideration of the doctors' opinions underlying those assessments.

Regarding the ALJ's assessment of her mental condition, Plaintiff contends that the ALJ erred by failing to contact the consulting examiner, Dr. Marilyn Frey, for clarification of her opinion (R. 341-43), he misconstrued the opinion, he ignored Dr. Frey's findings that Plaintiff had problems with concentration, a diagnosis of dysthymic (depression) and adjustment disorders, and a GAF score of 50, and he improperly relied on the report even though it

contained numerous inconsistencies.  *See Bartrom v. Apfel*, No. 00-1049, 2000 WL 1412777, *3 (7th Cir. Sept. 20, 2000) (unpublished) ("a [GAF] score below 51 indicates a possible inability to keep a job" and "[w]e are of the opinion that the GAF scores and recurrent bouts of depression are clearly significant lines of evidence that should have been addressed and analyzed by the ALJ").

The ALJ correctly noted that Dr. Frey stated that Plaintiff's depression does not impact her ability to work.  (R. 343.)  The ALJ also noted that Plaintiff had never sought treatment for depression or anxiety from a mental health specialist.  Overall, Dr. Frey's evaluation indicates her opinion that Plaintiff had fairly minor mental health issues.  After reviewing Dr. Frey's evaluation, the Court cannot conclude that the ALJ erred by his consideration of Dr. Frey's conclusions or his failure to mention the GAF score.  *See Walker*, 834 F.2d at 643 (stating that an ALJ need not mention every piece of evidence in his decision).

Plaintiff also contends that the ALJ erred by relying on the Psychiatric Review Technique Form when assessing Plaintiff's mental health because Dr. Patricia Beers, the State agency psychologist, did not have all the evidence when she completed that form in October 2005.  *See* SSR 96-5p, stating that the weight to be given to opinions of State agency sources depends on factors including any evidence the ALJ has that was not available to the doctors.  In support of this argument, Plaintiff referred generally to subsequent treatment by Drs. Sheikh and Bhuptani.  Although Plaintiff did not cite to the record, the Court found clinic notes by Dr. Sheikh dated February 2006 reporting depression and prescription medication to treat the depression.  (R. 437, 439.)  However, a diagnosis of depression is consistent with Dr. Frey's report.  Furthermore, Dr. Frey indicated that the level of Plaintiff's depression would not affect her ability to work.  (R. 343.)  In the absence of evidence that became available after Dr. Beers completed her report in October 2005 that supports a finding that Plaintiff's depression resulted in work-related limitations, the Court cannot conclude that the ALJ erred by relying on the reports of Drs. Frey and Beers.

**9**

Plaintiff raises the same argument with regard to the physical RFC, contending that the ALJ erred by relying on Dr. Bilinsky's RFC assessment because it was not based on all the evidence. Based on her report, Dr. Bilinsky considered medical evidence up to July 29, 2005, including clinic notes regarding Plaintiff's chest x-rays (December 2004 and July 2005), heart exam (May 2005), pulmonary test results (May 2005), lumbar spine x-ray (July 2005), and general exams related to chest pain and shortness of breath (July 2005). (R. 365.) She completed her report in October 2005 (R. 358-65).

The record includes a significant amount of medical evidence that became available after July and October 2005. The Court has reviewed the record and notes that this evidence includes discussion of new problems (for example, Drs. Lenardo and Frank Lee treated Plaintiff for ankle pain in December 2006) as well as exacerbation of ongoing impairments (for example, Dr. Michael Akerman discussed an "exacerbation of COPD" and asthma in November 2005). In addition, Drs. Sheikh and Lenardo evaluated Plaintiff's functional limitations in March and April 2006. In this case, because of the significant amount of medical evidence that became available after Dr. Bilinsky completed her report, the Court agrees that the ALJ erred by relying on Dr. Bilinsky's RFC assessment as the basis for his RFC determination.

Furthermore, the ALJ stated that he gave the opinions of Drs. Sheikh and Lenardo regarding Plaintiff's functional limitations less than controlling weight because they were inconsistent with treatment records and other treating doctor's opinions, including the opinions of Drs. Bhuptani and Hancock. The ALJ specifically referred to work release notes from Dr. Bhuptani dated July 1, 2005 (R. 228), and from Dr. Hancock dated July 5, 2005 (R. 249). While these notes may have accurately indicated Plaintiff's condition in July 2005, in light of the amount of medical evidence accumulated between July 2005 and the completion of the functional capacity evaluations by Drs. Lenardo and Sheikh, the Court concludes that those notes do not provide an adequate basis for discrediting the opinions of Drs. Lenardo and Sheikh. An ALJ may not consider only the evidence that favors his ultimate conclusion. *Smith v. Apfel*, 231

F.3d 433, 438 (7th Cir. 2000).  For these reasons, the Court recommends granting Plaintiff's motion for remand.

### B.  Plaintiff's Remaining Arguments

Plaintiff also argues that the ALJ erred by finding Plaintiff not credible and he erred at Step Four and Step Five because he gave the VE an incomplete hypothetical question and failed to explain or inquire into conflicts between the VE testimony and the DOT.  Having already determined that the case merits remand for reconsideration, the Court need not consider most of these arguments at this time.  However, for purposes of judicial economy, the Court will briefly address the DOT issue.

The ALJ stated in his decision that the VE stated that his testimony was consistent with the information contained in the DOT, except as related to the telemarketer positions.  After carefully reviewing the hearing transcript, the Court agrees with Plaintiff that the ALJ never asked the VE whether his testimony was consistent with the DOT and the VE did not make such a statement.  Instead, the VE volunteered the information that his testimony regarding telemarketing positions was inconsistent with the DOT.  The VE's voluntary information about one aspect of his testimony does not cover the remaining testimony.  Because the Court has recommended remand, the Court need not address this issue further.

### IV.  Summary

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment or Remand **(#14)** be **GRANTED** and that this case be remanded, pursuant to sentence four of 42 U.S.C. § 495(g)[1], for further consideration consistent with this Report and Recommendation.  The parties are advised that any objection to this recommendation must be

---

[1] Under 42 U.S.C. § 405(g), sentence four, "[t]he court shall have power to enter, upon pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a hearing."

**11**

filed in writing with the Clerk within ten working days after service of a copy of this recommendation.  *See* 28 U.S.C. 636(b)(1).  Failure to object will constitute a waiver of objections on appeal.  *Video Views, Inc. v. Studio 21, Ltd.,* 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 4th day of March, 2009.

s/ DAVID G. BERNTHAL<br>U.S. MAGISTRATE JUDGE